IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY GASTON, | ) | Case No. 1:19-CV-02462-SL |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| LASHANN EPPINGER, WARDEN, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Petitioner Timothy Gaston ("Gaston"), an Ohio inmate serving a term of life imprisonment, seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his convictions in *State v. Gaston*, Lake County, Ohio, Court of Common Pleas No. 14CR000246, violated his constitutional rights. (ECF Doc. No. 1). Respondent LaShann Eppinger ("Respondent") filed a Return of Writ (ECF Doc. No. 7), and Gaston filed a Traverse. (ECF Doc. No. 17).

In the Return of Writ, Respondent noted that he is the current warden of the Trumbull Correctional Institution where Gaston was previously incarcerated. (ECF Doc. No. 7, PageID # 38). Gaston is now incarcerated at the Lake Erie Correctional Institution. The current warden of the Lake Erie Correctional Institution is Douglas Fender,[1] who should be substituted as the proper respondent in this case. *See* 28 U.S.C.§ 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer

---

[1] *See* https://drc.ohio.gov/tci, last accessed November 14, 2022.

who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Gaston's Petition or other case-dispositive motions. (*See* ECF non-document orders dated 12/09/2019 and 09/02/2022). For the reasons set forth in detail below, the undersigned RECOMMENDS that the Court DISMISS and/or DENY Gaston's Petition.

## II.    RELEVANT FACTUAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, *2 (6th Cir. Oct. 30, 2017). The Ohio Court of Appeals for the Eleventh District set forth the following facts on direct appeal:

> {¶ 2} On the evening of July 25, 2013, Matthew Hammond and his girlfriend, Katalina Mudrick, had fallen asleep on a mattress in the living room of their mobile-home trailer. At approximately 4:00 a.m. the next morning, they were awakened to the sound of their screen door being broken. Mr. Hammond leapt out of bed and went towards the door. Two men broke in and pushed Mr. Hammond back onto the mattress and began beating him. The two men pulled Mr. Hammond into the kitchen and, as he attempted to stand, one of the assailants shot him. The attackers fled the trailer. Ms. Mudrick called 911 and, when police arrived, Mr. Hammond had already passed away.
>
> {¶ 3} An investigation commenced and Detective Brian Butler of the Lake County Sheriff's Office began to collect leads on the crime. Det. Butler received a tip from a resident of the trailer park which led him to begin searching for a white Chevy Impala, the vehicle that may have been used during the murder. The detective ultimately received information relating to a vehicle matching the description, located at the Seneca Grove Apartments in Painesville, Ohio. He subsequently obtained the surveillance video from the apartment of the morning in question. The video revealed a Chevy Impala entering the apartment complex at 1:12 on the morning of July 26, 2013. At 2:29 a.m., appellant, Marshaun Ligon, and Antonio Askew entered the "G Building" in the complex. At approximately 3:38 a.m., three individuals exited unit 62 of the "G Building," two of the three were identified as Mr. Ligon and Mr. Askew. The surveillance video depicted the Impala leaving the complex at 3:40 a.m. and returning sometime after 5:00 a.m.

{¶ 4} Det. Butler noted the license-plate number and determined the vehicle belonged to one Jennifer Ramian. Ms. Ramian ultimately gave the detective permission to search the vehicle, and the Sheriff's Office crime-scene unit discovered blood on the back passenger seat area. The blood was later confirmed as that of Mr. Hammond.

{¶ 5} Based upon the video and the information linking appellant to the apartment on the morning in question, Det. Butler attempted to locate him. Det. Butler later learned appellant was living in Knoxville, Tennessee.

{¶ 6} After arriving in Knoxville with Captain Ron Walters, Det. Butler spoke with Investigator Ed Kingsbury, of the Knoxville Police Department. The Ohio officers explained they wished to interview appellant as a person of interest in a murder investigation. In the course of the discussion, they revealed appellant had been adjudicated delinquent for a juvenile sex offense. Investigator Kingsbury advised them that, under Tennessee law, sex offenders are required to register with the state. Appellant had not registered. Ultimately, Investigator Kingsbury, along with two U.S. Marshalls, visited appellant's apartment in Knoxville. The Ohio officers accompanied them, but remained out of sight in the complex's parking lot.

{¶ 7} Appellant answered his door and Investigator Kingsbury explained the reason why he and the Marshalls were there. He asked appellant to accompany him to the police department to determine whether he was required to register. Appellant agreed and entered the back seat of the officers' unmarked vehicle. Investigator Kingsbury emphasized appellant was not required to accompany him and, at no time, was his freedom of movement restrained. Upon arriving at the department, appellant was placed in Investigator Kingsbury's office, located in the lobby of the building. Investigator Kingsbury subsequently spoke with, among others, the Knoxville District Attorney's Office and concluded appellant was not required to register as a sexual offender. Upon drawing this conclusion, Investigator Kingsbury left the office and advised Det. Butler and Capt. Walters they could speak with appellant.

{¶ 8} Det. Butler and Capt. Walters approached appellant, identified themselves, explained the reason for their presence, and commenced their interview. The Ohio officers were not aware that appellant was not required to register and assumed he had been arrested by Officer Kingsbury. They disclosed this belief to appellant and provided him with *Miranda* warnings, which he acknowledged and proceeded with the interview. Notwithstanding his assumption regarding appellant's arrest, Det. Butler noted appellant was not restrained in any way and he possessed his cell phone, which he used periodically throughout the interview.

{¶ 9} During the interview, appellant admitted he was at the scene of the murder, and that Mr. Ligon and Mr. Askew were involved. He stated he and the other two men intended on breaking into the trailer to steal money because they believed Mr. Hammond kept a fair amount of cash on hand. Once they arrived, appellant maintained Mr. Askew remained in the vehicle and Mr. Ligon broke into the residence. He first maintained he remained on the porch. Appellant then admitted he entered the trailer to grab Mr. Ligon approximately

15 seconds after he broke into the residence. Upon entering, he stated he observed a struggle between Mr. Hammond and Mr. Ligon. When he realized he could not compel Mr. Ligon to leave, appellant claimed he left the trailer and, while leaving, he heard a gun fire. He subsequently moved to Tennessee.

*State v. Gaston*, No. 2017-L-109, 2018 WL 5923686, 2018-Ohio-4575, ¶¶ 2-9 (11th Dist. Ohio Nov. 13, 2018).

## III. RELEVANT STATE PROCEDURAL HISTORY

### A. State Court Conviction

On April 24, 2014, a Lake County Grand Jury issued an indictment charging Gaston with the following fifteen counts:

Counts One: Aggravated Murder in violation of Ohio Rev. Code Ann. § 2903.01(B) with accompanying firearm specifications;

Count Two: Murder in violation of Ohio Rev. Code Ann. § 2903.02(A) with accompanying firearm specifications;

Count Three: Murder in violation of Ohio Rev. Code Ann. § 2903.02(B) with accompanying firearm specifications;

Count Four: Kidnapping in violation of Ohio Rev. Code Ann. § 2905.01(A)(2) with accompanying firearm specifications;

Count Five: Kidnapping in violation of Ohio Rev. Code Ann. § 2905.01(B)(2) with accompanying firearm specifications;

Count Six: Kidnapping in violation of Ohio Rev. Code Ann. § 2905.01(A)(3) with accompanying firearm specifications;

Count Seven: Aggravated Burglary in violation of Ohio Rev. Code Ann. § 2911.11(A)(2) with accompanying firearm specifications;

Count Eight: Aggravated Burglary in violation of Ohio Rev. Code Ann. § 2911.11(A)(1) with accompanying firearm specifications;

Count Nine: Burglary in violation of Ohio Rev. Code Ann. § 2911.12(A)(1) with accompanying firearm specifications;

Count Ten: Aggravated Robbery in violation of Ohio Rev. Code Ann. § 2911.01(A)(3) with accompanying firearm specifications;

Count Eleven: Aggravated Robbery in violation of Ohio Rev. Code Ann. § 2911.01(A)(1) with accompanying firearm specifications;

Count Twelve: Robbery in violation of Ohio Rev. Code Ann. § 2911.02(A)(2) with accompanying firearm specifications;

Count Thirteen: Robbery in violation of Ohio Rev. Code Ann. § 2911.02(A)(1) with accompanying firearm specifications;

Count Fourteen: Felonious Assault in violation of Ohio Rev. Code Ann. § 2903.11(A)(1) with accompanying firearm specifications; and

Count Fifteen: Felonious Assault in violation of Ohio Rev. Code Ann. § 2903.11(A)(2) with accompanying firearm specifications.

(*See* ECF Doc. 7-1, PageID # 71-80).

Gaston, through counsel, pleaded not guilty to all charges on April 28, 2014. (ECF Doc. No. 7-1, PageID # 81-82). On May 30, 2014, Gaston "waive[d] his statutory and constitutional speedy trial time[,]" and moved the trial court to continue the trial scheduled for June 10, 2014, on the basis that he needed more time to conduct an investigation. (*Id.* at PageID # 99, 102). The trial court granted Gaston's motion. (*Id.* at PageID # 101).

On August 5, 2014, Gaston filed a Motion to Suppress. (ECF Doc. No. 7-1, PageID # 106-11). In it, Gaston argued that his arrest was unlawful because he was not required to register as a sex offender in Tennessee. (*Id.* at PageID # 108). As a result, Gaston argued, any evidence obtained and/or statements he made to the Ohio police officers violated his Fourth Amendment rights and should be suppressed. (*Id.* at PageID # 108-11).

The trial court held a hearing and ultimately denied Gaston's Motion to Suppress on April 28, 2017. (ECF Doc. No. 7-1, PageID # 187-95). In doing so, the trial court determined, in part, that: (1) Gaston was not under arrest when he spoke with the Ohio police officers; (2) there was no evidence indicating that Gaston understood or believed he was under arrest; and (3) Gaston's statements, therefore, were not made as a result of an unlawful arrest. (*Id.* at PageID # 194-95).

On March 30, 2017, prior to the trial court's ruling on Gaston's Motion to Suppress, Gaston filed a "Motion to Discharge for Violation of Defendant's Right to a Speedy Trial" ("Motion to Discharge"). (ECF Doc. No. 7-1, PageID # 196-209). In it, Gaston argued that the trial court had yet to rule on his Motion to Suppress or otherwise proceed to trial, and that over one thousand days will have elapsed by the time of the tentatively scheduled trial date of May 30, 2017. (*Id.* at PageID # 199, 201). In response, the State argued, in part, that: (1) Gaston waived his speedy trial rights on May 14, 2014; (2) Gaston's Motion to Discharge was Gaston's first written objection to any delay; and (3) the State, therefore, had to bring Gaston to trial within a reasonable amount of time after Gaston filed his Motion to Discharge. (*Id.* at PageID # 212). The State asserted that the trial court's action of setting a trial date of May 30, 2017 on the same day Gaston filed his Motion to Discharge was reasonable. (*Id.*).

The trial court denied Gaston's Motion to Discharge on May 12, 2017. (ECF Doc. No. 7-1, PageID # 247-53). In doing so, the trial court determined that Gaston signed an unconditional waiver of his speedy trial rights on May 30, 2014, and that Gaston had never formally withdrawn his waiver or demanded a trial. (*Id.* at PageID # 249). The trial court, therefore, concluded that Gaston's waiver of his speedy trial rights was still in effect when Gaston filed his Motion to Discharge, and it construed Gaston's Motion to Discharge as a withdrawal of Gaston's waiver of speedy trial rights. (*Id.* at PageID # 249-50).

The trial court then noted that it had set a trial date of May 30, 2017, on the same date – but several hours before – Gaston filed his Motion to Discharge (*i.e.*, on March 30, 2017), and analyzed the reasonableness of the time period between those dates. (*Id.* at PageID # 250-52). The trial court noted that, prior to setting the May 30, 2017, trial date, the State had filed a motion requesting that the trial court set a trial date. (*Id.* at PageID # 250-51). In its motion, the State advised the trial court that: (1) the State had provided Gaston's new attorney with all of the

discovery; (2) the State had met with Gaston's new attorney and engaged in lengthy negotiations in an attempt to resolve the case; (3) Gaston had recently rejected the State's final offer; and (4) the trial would take at least five full days. (*Id.* at PageID # 252). The trial court then indicated that Gaston's counsel had previously advised the trial court that he would be out of town for most of April 2017, so the trial court proposed three trial dates: May 1, 2017, May 30, 2017, and June 12, 2017. (*Id.* at PageID # 252). The trial court indicated that Gaston's counsel preferred the May 30, 2017, trial date, that the State agreed to this date, and that, pursuant to this agreement, it set the trial date for May 30, 2017. (*Id.*). The trial court concluded that the sixty-one-day period between when Gaston filed his Motion to Discharge and the scheduled trial date was reasonable. (*Id.*)

The matter proceeded to a jury trial, and the jury found Gaston guilty on all counts. (ECF Doc. No. 7-1, PageID # 270-73). The trial court sentenced Gaston to an aggregate term of life imprisonment with parole eligibly after serving 47 years. (*Id.* at PageID # 289).

## B. Direct Appeal

Gaston, through counsel, pursued a timely direct appeal in the Ohio Court of Appeals for the Eleventh District. (ECF Doc. No. 7-1, PageID # 291). Gaston's appellate brief raised the following two assignments of error:

> Assignment of Error I – The trial court erred in denying defendant's motion to suppress his statement.

> Assignment of Error II – The trial court erred in denying defendant's motion to discharge for violation of defendant's right to speedy trial.

(ECF Doc. 7-1, PageID # 328). On November 13, 2018, the Ohio Court of Appeals for the Eleventh District overruled Gaston's assignments of error and affirmed his convictions. *Gaston*, 2018-Ohio-4575, at ¶ 1.

Regarding Gaston's motion to suppress, the Ohio Court of Appeals for the Eleventh District explained:

{¶ 11} In his motion to suppress, appellant asserted his statements during his interview with Det. Butler and Capt. Walters [*i.e.*, the Ohio police officers] were obtained as a result of or subsequent to an unlawful arrest. In particular, he asserts he was arrested by Tennessee officers for failing to register as a sex offender in Tennessee. And, this unlawful arrest was occasioned by the Lake County officers contacting the Tennessee authorities to assist in apprehending him. He argued Tennessee authorities worked in coordination with the Lake County officers to improperly secure his arrest in order for the Ohio officers to interrogate him regarding the murder of Mr. Hammond.

{¶ 12} In response, the state argued that, even though the Ohio officers erroneously advised appellant he was under arrest by the Knoxville Police Department, he was never actually under arrest. Instead, the state maintained appellant voluntarily accompanied the Tennessee officers to their department to determine whether he should be registered. Thus, the state concluded, because there was no initial arrest, the evidence gleaned from the interview was not tainted and should not be suppressed.

{¶ 13} The trial court held a hearing on the motion and ultimately denied the same, concluding appellant was neither under arrest when he spoke with Investigator Kingsbury, nor when he was interviewed by the Lake County officers.

* * *

{¶ 16} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). The trial court's "findings of fact are to be accepted if they are supported by competent, credible evidence," whereas the appellate court is "to independently determine whether [the facts as determined by the trial court] satisfy the applicable legal standard." *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 41; *State v. Yu*, 11th Dist. Geauga Nos. 2014-G-3209 and 2014-G-3210, 2015-Ohio-637, ¶ 7.

{¶ 17} On appeal, appellant first asserts Investigator Kingsbury's explanation that appellant voluntarily accompanied him to the Knoxville Police Department is suspect. Appellant asserts the officer could have confirmed that he was not required to register without his presence at the department. And, appellant contends, the circumstances of Investigator Kingsbury's request indicate appellant was essentially compelled to accompany him; that is, the Tennessee officers were armed and wearing tactical vests. In appellant's view, a reasonable person would not feel free to remain in the residence.

{¶ 18} The law recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Peacock*, 11th Dist. Lake No. 2002-L-115, 2003-Ohio-6772, ¶ 14, citing *State v. Taylor*, 106 Ohio App.3d 741, 747-49 (2d Dist.1995). "'[N]ot all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a

"seizure" has occurred' within the meaning of the Fourth Amendment." *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 11 (10th Dist.) quoting *Terry v. Ohio*, 392 U.S. 1, 19.

{¶ 19} The Supreme Court of Ohio has set forth four factors that must be present for an arrest to occur. To wit: "(1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Barker*, 53 Ohio St.2d 135 (1978), paragraph one of the syllabus.

{¶ 20} At the hearing, Investigator Kingsbury testified he and two U.S. Marshalls knocked on appellant's door and, when he answered, they introduced themselves. The investigator explained his role at the department was ensuring sex offenders in the county were in compliance with registration requirements. After further advising appellant he was aware of appellant's juvenile delinquency adjudication for a sex offense, the investigator asked appellant to accompany him to the department to determine whether he was required to register. Investigator Kingsbury stated appellant was not nervous, answered all his questions, and agreed to return to the department with him. Appellant rode with the investigator in his unmarked truck, was not restrained, and the two engaged in friendly conversation. Upon arrival at the department, appellant sat in the investigator's office and, according to the investigator, was free to leave at any time. And, at the hearing, the investigator testified that, in taking appellant to the department, he "was not taking him into custody for anything." Instead, the investigator stated, if it turned out he was required to register, he wanted him personally available to begin the process.

{¶ 21} The foregoing demonstrates that the investigator had no intent, throughout the entirety of the encounter, to arrest appellant. His purpose was to inquire into whether appellant needed to register and, if so, commence the process. Appellant accompanied the investigator without objection and, because he was not actually restrained or otherwise forced to cooperate, it is reasonable to conclude he understood he was not under arrest. Appellant disputes the investigator's motivations and advances a different construction of his intentions. The trial court, however, as the arbiter of witness' credibility, elected to believe Inspector Kingsbury's testimony. The officers did not compel appellant, through physical force or some alternative outward demonstration of authority, to join them. The facts and circumstances show that appellant voluntarily accompanied the officers to the department without any means of coercion. We find no error in the trial court's conclusion that appellant was not unlawfully arrested by Investigator Kingsbury.

{¶ 22} Next, appellant argues neither Investigator Kingsbury nor Capt. Walters and Det. Butler possessed probable cause to arrest appellant prior to the latter's interview. Appellant's assertion presupposes an arrest occurred either by the investigator or the Ohio officers. Because we conclude appellant was not the subject of an unlawful arrest by Investigator Kingsbury, no probable cause analysis is necessary. Similarly, even though the Ohio officers mistakenly advised appellant he was under arrest by the Knoxville police and then *Mirandized* him, these points do not imply he was under arrest at the time the interview commenced.

{¶ 23} Det. Butler described appellant as a person of interest that was connected to the Hammond murder investigation. He testified he and Capt. Walters believed appellant had information that could assist the investigation. He did not, however, testify he had probable cause to arrest appellant for the murder. In this respect, at the commencement of the interview, Det. Butler did not have the requisite intent to arrest appellant at the outset of the interview. Hence, Det. Butler did not need probable cause to speak with appellant.

{¶ 24} Moreover, after Investigator Kingsbury was advised that appellant was not required to register in Tennessee, he testified he asked appellant if he would be willing to speak with Det. Butler and Capt. Walters. Appellant agreed to do so. Moreover, when the Ohio officers greeted appellant, they also asked him if they could interview him. Again, appellant agreed. And, according to Investigator Kingsbury, appellant did so in a "friendly" fashion. These points demonstrate that appellant, upon commencement of the interview with the Ohio officers, understood he was not under arrest, but simply speaking with them pursuant to their request. We therefore conclude no probable cause was necessary for the Ohio officers to conduct the interview with appellant.

{¶ 25} Appellant finally asserts the issuance of *Miranda* warnings by the Ohio officers did not remove the taint of the unlawful arrest. Because we conclude appellant was never arrested, as a matter of law, his statements to the officers were never tainted. The *Miranda* warnings were only issued as a prophylactic measure because the Ohio officers were under the erroneous assumption that appellant was charged and arrested for failing to register as a sexual offender. As noted above, however, this assumption and the subsequent formal issuance of *Miranda* warnings did not transmogrify the voluntary interview into an arrest.

{¶ 26} Appellant's first assignment of error lacks merit.

*Gaston*, 2018-Ohio-4575, at ¶¶ 11-13; ¶¶ 16-26.

Regarding Gaston's speedy trial rights, the Ohio Court of Appeals for the Eleventh District

explained:

{¶ 29} The Supreme Court of Ohio has stated: "* * * R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay*, 64 Ohio St.2d 218 (1980), syllabus. Hence, "for purposes of bringing an accused to trial, the statutory speedy trial provisions of R.C. 2945.71, et seq., and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive." *State v. O'Brien*, 34 Ohio St.3d 7, 9 (1987).

{¶ 30} A criminal defendant, however, may waive his or her constitutional right to a speedy trial, provided such waiver is knowingly and voluntarily made. *Barker v. Wingo*, 407 U.S. 514, 529 (1972). Similarly, a defendant, or his or her counsel, may validly waive the speedy trial provisions of R.C. 2945.71, et seq. *State v. McBreen* (1978), 54 Ohio St.2d 315 (1978). It therefore follows that "a knowing, voluntary, express written waiver of an accused's statutory speedy trial rights may equate with a waiver of the coextensive

constitutional rights, at least for the time period provided in the statute." O'Brien, *supra*. "Following an express, written waiver of unlimited duration by an accused of his right to a speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time." *Id.*, at paragraph two of the syllabus.

{¶ 31} On May 30, 2014, appellant filed a written waiver of his constitutional and statutory rights to a speedy trial. The waiver was not conditional and, as a result, the trial court properly construed the waiver as unlimited in nature. The waiver was signed by both appellant and witnessed by his attorney. And there is nothing in the record to suggest the waiver was not knowing and voluntary. And appellant neither formally demanded that a trial date be set nor did he specifically file a motion to withdraw the waiver. We therefore conclude the waiver was a valid and unlimited waiver of appellant's constitutional and statutory right to a speedy trial.

{¶ 32} Appellant asserts the waiver was not unlimited because the trial court, in three separate judgment entries granting continuances, noted "time [is] charged to the Defendant." The trial court's notation does not limit or negate appellant's knowing and voluntary relinquishment of his constitutional and statutory rights. To the contrary, the trial court's statement could be reasonably construed as a pro forma or boilerplate advisement that is placed on all judgments granting a criminal defendant's motion. Because appellant's written waiver was knowingly and voluntarily made, was of unlimited duration, and he did not object and demand a trial, pursuant to *O'Brien*, the speedy trial provisions in R.C. 2945.71 et seq., do not apply. The trial court did not err when it concluded appellant was not entitled to discharge, pursuant to R.C. 2945.73(B).

{¶ 33} In denying appellant's motion to discharge for violation of his rights to a speedy trial, however, the trial court construed the motion as a withdrawal of the unlimited waiver and as a demand for trial (even though no demand was actually filed). In doing so, the trial court considered whether, at the time appellant filed the motion/objection, whether appellant would be brought to trial within a reasonable time. The court observed appellant's constructive revocation of his waiver was filed on March 30, 2017 and, pursuant to the attorneys' agreement, trial was set for May 30, 2017.

{¶ 34} In *Barker*, *supra*, the United States Supreme Court "set forth a balancing test that considers the following factors to determine whether trial delays are reasonable under the Sixth and Fourteenth Amendments to the United States Constitution: 'Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 38 quoting *Barker*, *supra*, at 530.

{¶ 35} With respect to the first factor, 61 days passed from the filing of the motion and the date of trial. In its judgment entry, the trial court made the following observations on the total length of delay in setting a trial date, even though this delay is not the focus of the O'Brien analysis:

{¶ 36} [A]side from motion practice and discovery issues that were outlined by the State of Ohio, the parties in this case engaged in extensive and lengthy plea bargaining negotiations throughout the pendency of this case. Even as of the beginning of this year, as indicated by the State in its motion to set trial date, filed on February 24, 2017, the parties were still attempting to resolve this matter. And while the Court did not participate in the plea negotiations, the Court was asked to afford the parties time to make these attempts at resolving the case. Inasmuch as there was a waiver of speedy trial in effect, the Court went along with their request. To compound matters, there have also been three attorneys involved in this case [for the Defendant]. Upon the entry of the appearance of each new attorney, the Court provided time for the new attorneys to get involved in the case.

{¶ 37} As for the reasons for setting the trial on May 30, 2017, the Court first again notes that the waiver of speedy trial was still in effect when this trial date was set by the Court. Second the Court also notes that prior to scheduling the trial, the State had filed a motion to set trial date. In said motion, the State advised the Court that the State had provided the Defendant's new attorney with all of the discovery, had met with Defendant's new attorney at the crime laboratory to review forensic evidence, and had engaged in lengthy negotiations in an attempt to resolve the case. The Stated further advised the Court that the Defendant had just recently rejected the State's final offer to resolve the case and that the case needed to be set for trial. The Court was also advised that the trial would take at least five full days to try. As a result, this Court soon thereafter, instead of just setting that trial date sua sponte without any input from counsel as to availability, contacted the lawyers to determine when would be the best date for all parties for a minimum five-day trial. The Court proposed three dates: May 1, 2017, May 30, 2017, and June 12, 2017. The Court further advised that May 1, 2017, was the Court's first choice and preferred date, but that the other dates were available on the Court's calendar as well for a week-long trial. In response, the Court was advised that because the Defendant's attorney was out of town [from April 1, 2017] until April 24, 2017, he would prefer the May 30, 2017, trial date. The State agreed. The Court then set the trial on the date agreed to by the parties, May 30, 2017.

{¶ 38} In light of the foregoing, and the total of 61 days, the trial court found the length of the delay as well as the reasons for the delay were not unreasonable. We discern no error in this conclusion.

{¶ 39} Regarding the third *Barker* factor, appellant never directly asserted his right to a speedy trial. It was only by virtue of the trial court electing to treat his motion for discharge as a withdrawal of his unlimited waiver and a demand for trial that the issue arose.

{¶ 40} Finally, appellant does not argue his defense was somehow prejudiced by the delay at issue. He argues that, even if the filing of his motion to suppress evidence was a tolling event, the court's 26-month delay in ruling on the same was unreasonable. Preliminarily, appellant does not acknowledge that, while the motion was pending, he had previously waived his speedy trial rights. Appellant's argument is, in effect, merely a red herring. Because appellant fails to advance any argument regarding how any delay prejudiced his defense, we hold the trial court did not err in concluding appellant suffered no prejudice by the trial date being set 61 days after his constructive withdrawal of the waiver. In light of the foregoing, we conclude the trial court did not err in finding no speedy trial violation.

12

{¶ 41} Appellant's second assignment of error lacks merit.

*Gaston*, 2018-Ohio-4575, at ¶¶ 29-41.

### C.    Ohio Supreme Court

On December 24, 2018, Gaston, *pro se*, filed a notice of appeal in the Supreme Court of

Ohio. (ECF Doc. 7-1, PageID # 413). Gaston raised the following two propositions of law:

> PROPOSITION OF LAW NUMBER I: The trial court erred in denying Gaston's motion to suppress, in violation of his protections against illegal search and seizure and self-incrimination under the Fourth and Fifth Amendments to the U.S. Constitution, and Article I, Section [] 14 of the Ohio Constitution.
>
> PROPOSITION OF LAW NUMBER II: The trial court violated Gaston's right to a speedy trial, as provided by the Sixth Amendment to the U.S. Constitution and Article I, Section [] 10 of the Ohio Constitution

(*Id.* at PageID # 416). On March 6, 2019, the Ohio Supreme Court declined to accept jurisdiction

of Gaston's appeal. (*Id.* at PageID # 461). Justice Donnelly, however, dissented on the basis that

he would accept the cause on Proposition of Law No. II. *State v. Gaston*, 154 Ohio St. 3d 1521, !

18 N.E.3d 258 (2019)  (Donnelly, J., dissenting).

## IV.    FEDERAL HABEAS CORPUS PETITION

On October 21, 2019, Gaston, *pro se*, filed the instant Petition for writ of habeas corpus

asserting the following two grounds for relief[2]:

> **GROUND ONE:**
> Petitioner was denied his protections against illegal search and seizure and self-incrimination, rights secured under the Fourth and Fifth Amendments to the U.S. Constitution when his trial court erred in denying Gaston's motion to suppress.
>
> **SUPPORTING FACTS:**
> Petitioner did not receive a fair litigation of his Fourth Amendment claim in state court. Petitioner also was improperly denied the suppression of his pretrial statement due to his being affirmatively misled that he was properly detained when he was not; he was actually illegally arrested under false pretenses and without probable cause. The state courts

---

[2] Gaston's grounds for habeas relief asserted in his Petition are set forth verbatim herein, including certain typographical and/or grammatical errors.

refused to consider or address the evidentiary facts in the case, voiding any claim of fair litigation. Nothing deprives the federal courts of jurisdiction for this issue. The *Miranda* warnings given did not remove the taint of the unlawful arrest, making any statement by Petitioner "fruit of the poisonous tree." The prosecution did not meet the burden of showing that the statement was admissible.

**GROUND TWO:**
Petitioner was denied his right to a speedy trial as provided by the Sixth Amendment to the U.S. Constitution.

**SUPPORTING FACTS:**
Petitioner was denied the right to a fast and speedy trial. The state failed to bring Petitioner to trial within a time period that was reasonable to rule on a motion to suppress evidence, Petitioner signed a waiver of his right to a speedy trial, but the waiver was not unlimited. The waiver was to give time for the trial court to rule on a motion to suppress evidence. The trial court took twenty-six (26) months to rule on the motion, which was certainly not reasonable. There were no other events applicable to Petitioner that would have tolled his time to trial. Petitioner was incarcerated in the county jail for 1,149 days, or 1,059 days beyond the time for a speedy trial.

(ECF Doc. No. 1, PageID # 5-7).

## V.      STANDARDS OF REVIEW AND GOVERNING LAW

### A.    Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Court of Common Pleas of Lake County sentenced Gaston, and the Court takes judicial notice that Lake County is within this Court's geographic jurisdiction. (*See* ECF Doc. No. 7-1, PageID # 286-90). Accordingly, this Court has jurisdiction over Gaston's § 2254 petition.

### B.    AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Gaston's

Petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," and "'to further the principles of comity, finality, and federalism[.]'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision prohibits federal habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). A state court has adjudicated a claim "on the merits[,]" and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes only "'the holdings, as opposed to the dicta, of [Supreme Court] decisions.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court's determination of fact is unreasonable under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (quoting § 2254(e)(1)); *see also Rice v. White,* 660 F.3d 242, 250 (6th Cir. 2011). "This standard requires the federal courts to give considerable deference to state court decisions." *Forensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court has repeatedly emphasized that § 2254(d), as amended by

16

AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims. The Supreme Court has admonished that a reviewing court may not "treat[] the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review[,]" and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,'" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03, quoting *Jackson*, 443 U.S. at 333 n.5 (Stevens, J., concurring in judgment). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. The Supreme Court readily acknowledges that this is a very high standard, observing that: "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102.

## C.    Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's

claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Procedural default is "a critical failure to comply with state procedural law," *Trest v. Cain*, 522 U.S. 87, 89 (1997), resulting in a bar to federal habeas review unless the petitioner has a sufficient basis for having the default excused, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A claim may become procedurally defaulted in two ways." *Williams*, 460 F.3d at 806. "First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* "If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted." *Id.* "Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures'" *Id.* (quoting *O'Sullivan*, 526 U.S. at 847). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A "fundamental

miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### D.   Cognizable Federal Claim

A petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* To say that a petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).

Federal habeas corpus relief "does not lie for errors of state law[.]" *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law. *See, e.g.*, *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen*, 845 F.2d at 614 (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

## VI.   ANALYSIS

### A.   Ground One – Fourth & Fifth Amendment Claims

In Ground One, Gaston asserts that the trial court violated his constitutional rights under the Fourth and Fifth Amendments. (ECF Doc. No. 1, PageID # 5). Regarding the Fourth Amendment, Gaston asserts that the trial court erred by denying his Motion to Suppress the

evidence obtained as a result of the illegal search and seizure because: (1) he was affirmatively misled that he was properly detained when he was not; (2) he was arrested under false pretenses; (3) the officers lacked probable cause to arrest him; and (4) the trial court refused to consider or address the evidentiary facts in this case. (*Id.*). Regarding the Fifth Amendment, Gaston asserts that the *Miranda* warnings given did not "remove the taint of the unlawful arrest," making his statements "fruit of the poisonous tree." (*Id.*). The undersigned will address each claim below.

### 1.    *Fourth Amendment Claim*

#### i.    *Relevant Law*

Generally, a writ of habeas corpus cannot be granted on the ground that a petitioner's Fourth Amendment rights were violated if the petitioner had an opportunity to present the claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007); *accord Ewing v. Ludwick*, 134 Fed. Appx. 907, 911 (6th Cir. 2005). Indeed, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced in his trial." *Powell* at 494. Full and fair litigation requires the court to consider: (1) "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim" and (2) "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). If there was an opportunity to raise the claim and the presentation was not frustrated, the petitioner's claim is non-cognizable. *See id.*

The Sixth Circuit Court of Appeals has explained that the *Powell* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim. *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Thus, "[i]n the absence of a sham

proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.* Rather, a court must "presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim." *Id.* In sum, the Sixth Circuit explained that, in considering whether a habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, the court asks: "Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640. *See also Harrington v. Warden, London Corr. Inst.*, No. 1:10-CV-751, 2013 WL 5944193, at *4 (S.D. Ohio Nov. 5, 2013).

### ii.    *Application of Law*

Gaston's Fourth Amendment claim is non-cognizable because Gaston had an "opportunity for full and fair consideration" of that claim, meaning "an available avenue for [him] to present his claim to the state courts[.]" *Good* at 639. Gaston filed a Motion to Suppress based upon alleged violations of his Fourth Amendment rights, the trial court conducted a suppression hearing, and the trial court ultimately ruled against Gaston. (*See* ECF Doc. No. 7-1, PageID # 106-11; *id.* at PageID # 187-95). Gaston then argued his claim on direct appeal, and the Ohio Court of Appeals for the Eleventh District rejected it. *Gaston*, 2018-Ohio-4575, ¶¶ 15-24. As a result, Gaston's Fourth Amendment claim is non-cognizable. *See Good* at 640 ("Good could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court rejected it once more. That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*."). This is so regardless of the fact that Gaston – in his Traverse – couches the alleged violation of his Fourth Amendment rights in terms of a due process violation. *See Engle v. City of Cuyahoga Falls*, No. 5:14-CV-1161, 2015 WL 3852143, at *12 (N.D. Ohio June 22, 2015) (acknowledging that an allegation of an illegal search and seizure is specifically covered by the Fourth Amendment, and "should be

analyzed under the specific standard reserved for Fourth Amendment claims, rather than under the general requirements of substantive due process."); *Boroff v. Van Wert City Bd. of Educ.*, 220 F.3d 465, 471 (6th Cir. 2000) (citing *Conn v. Gabbert*, 526 U.S. 286, 293 (1999)) ("[T]he Supreme Court has repeatedly emphasized that substantive due process is not to be used as a fallback constitutional provision when another provision or amendment .   .   . directly addresses the subject."); *see also Wilson v. Tibbals*, No. 1:13CV00365, 2015 WL 1980714, at *7 (N.D. Ohio Apr. 30, 2015) ("It is well established that new arguments raised for the first time in a traverse, rather than the habeas petition itself, are not properly before the Court and will not be considered."). Accordingly, the undersigned recommends that the Court dismiss Gaston's claim under the Fourth Amendment as non-cognizable.

### 2.    Fifth Amendment Claim

#### i.    Relevant Law

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. The privilege against self-incrimination applies to the States through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). The privilege against self-incrimination prohibits the government from using any statement against a criminal defendant "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In *Miranda*, the Supreme Court held:

> [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning . . . [h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 478-79. *Miranda* warnings are intended to guard against the coercion inherent in a police-dominated environment where the interplay between interrogation and custody would "'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980) (quoting *Miranda*, 384 U.S. at 457-58). The procedural safeguards set forth in *Miranda* "are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Innis* at 300.

The *Miranda* Court defined "custodial interrogation" to mean "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "'[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003) (quoting *Stansbury v. California*., 511 U.S. 318, 323 (1994)) (alteration in original). "'[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id*. (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)) (alteration in original). "The reasonable person test is appropriate because, unlike a subjective test, it does not 'place upon the police the burden of anticipating the frailties or idiosyncrasies of every person whom they question.'" *United States v. Macklin*, 900 F.2d 948, 951 (6th Cir. 1990) (quoting *Berkemer*, 468 U.S. at 442 n.35). Several factors guide the analysis, including: "(1) the location of the interview; (2) the length and manner of questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010); *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). In the Sixth Circuit, courts must consider the totality of the circumstances surrounding the encounter, "with

23

'the ultimate inquiry' turning on whether 'a formal arrest' occurred or whether there was a 'restraint on freedom of movement of the degree associated with a formal arrest.'" *Panak*, 552 F.3d at 465 (quoting *Stansbury*, 511 U.S. at 322).

A person may waive his Fifth Amendment rights, provided he does so voluntarily, knowingly, and intelligently. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A waiver is "voluntary" if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception[.]" *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *Burbine*, 475 U.S. at 421). A waiver is "knowing and intelligent" when "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 382-83 (quoting *Burbine*, 475 U.S. at 421). To aid in that inquiry, courts looks to factors such as "the suspect's 'age, experience, education, background, and intelligence,'" *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, (1979)), as well as "the length and nature of the questioning, the advice [given] regarding *Miranda* rights, and the use of physical punishment, such as deprivation of food or sleep." *United States v. Hampton*, 572 F. Appx. 430, 433 (6th Cir. 2014) (citing *Murphy v. Ohio*, 551 F.3d 485, 511 (6th Cir. 2009)). In evaluating both prongs, courts "must consider the 'totality of the circumstances surrounding the interrogation.'" *Hampton*, 572 F. Appx. at 433 (quoting *Burbine*, 475 U.S. at 421). "On habeas review, . . . it is the petitioner who has the burden of establishing that he did not knowingly and intelligently waive his *Miranda* rights." *Johnson v. Wainwright*, No. 1:17-CV-2143, 2019 WL 7284990, at *13 (N.D. Ohio Aug. 8, 2019), *report and recommendation adopted*, No. 1:17 CV 2143, 2019 WL 5616318 (N.D. Ohio Oct. 31, 2019).

### ii. *Application of Law*

Gaston has not established that the Ohio Court of Appeals for the Eleventh District's decision regarding the alleged violation of his Fifth Amendment rights was an unreasonable

application of the facts, or an incorrect application of clearly established federal law. As previously noted, the Ohio Court of Appeals for the Eleventh District determined that: (1) Gaston was not under arrest when he spoke with the Ohio police officers; (2) the Ohio police officers' mistaken belief that Gaston was under arrest did not change this fact; and (3) while the Ohio police officers issued a *Miranda* warning to Gaston before speaking with him – no *Miranda* warning was required because Gaston was not subject to a custodial interrogation. *Gaston*, 2018-Ohio-4575, at ¶ 25. In support of its decision, the Ohio Court of Appeals for the Eleventh District relied upon several facts, including the fact that: (1) Gaston agreed to accompany Investigator Kingsbury to the police department to determine whether Gaston was required to register as a sex offender; (2) Gaston was never physically restrained; (3) Investigator Kingsbury told Gaston he was free to leave at any time; (4)  Investigator Kingsbury and Gaston engaged in friendly conversation; (5) Investigator Kingsbury had no intent to arrest Gaston; and (6) when Investigator Kingsbury asked Gaston whether he was willing to speak with the Ohio police officers, Gaston agreed in a "'friendly' fashion." *Gaston*, 2018-Ohio-4575, at ¶¶ 20-21. The Ohio Court of Appeals for the Eleventh District determined that, in light of these facts, it was reasonable to conclude that Gaston understood that he was not under arrest. (*Id.*)

In his Petition, Gaston asserts that he was affirmatively misled (presumably by the Ohio police officers) that he was properly detained, that he was arrested under false pretenses, and that the *Miranda* warning given by the Ohio police officers did not "remove the taint of the unlawful arrest[.]" (ECF Doc. No. 1, PageID # 5). In his Traverse, Gaston asserts that the Ohio Court of Appeals for the Eleventh District's determination of the facts was unreasonable,  that it incorrectly applied clearly established federal law, that he was subject to coercion, and that he did not knowingly, voluntarily, or intelligently waive his Fifth Amendment rights. (ECF Doc. No. 17, PageID # 2021-22). To the extent Gaston attempts to assert new arguments in his Traverse that he

did not raise in his Petition, "it is well-established that new arguments raised for the first time in a traverse, rather than the habeas petition itself, are not properly before the [c]ourt and will not be considered." *Bangera v. Wainwright*, No. 1:19 CV 33, 2022 WL 985628, at *2 (N.D. Ohio Mar. 31, 2022) (quoting *Banks v. Tibbals*, No. 1:11-CV-495, 2014 WL 132271, at *16 (N.D. Ohio Jan. 14, 2014)) (alteration in original).

Even if a reasonable person – like Gaston belatedly argues in his Traverse – would have believed he was under arrest at the time he spoke with the Ohio police officers, those officers issued a *Miranda* warning to Gaston. *See Gaston*, 2018-Ohio-4575, ¶ 8. While Gaston asserts that he did not knowingly, intelligently, and voluntarily waive his Fifth Amendment rights, and that his statements were a result of coercion, those assertions are not supported by the record. Instead, Gaston attempts to support his argument in that regard by claiming that: (1) while he may have agreed to go to the police department with the Investigator Kingsbury, "when confronted at your residence by an investigator and two US Marshal[]s it really isn't an option[;]" and (2) he did not know the Ohio police officers were waiting in the parking lot to question him. Those facts, without more, do not support a finding that Gaston has met his burden on habeas review of establishing that he did not knowingly, intelligently, and voluntarily waive his Fifth Amendment rights, or that his statements were the product of coercion. *See Johnson*, 2019 WL 7284990, at *13. Moreover, Gaston has not otherwise established that the Ohio Court of Appeals for the Eleventh District's decision regarding the alleged violation of his Fifth Amendment rights was an unreasonable application of the facts, or an incorrect application of clearly established federal law.

Accordingly, the undersigned recommends that the Court dismiss Ground One relative to Gaston's Fourth Amendment claim as non-cognizable, and it should deny Ground One relative to Gaston's Fifth Amendment claim on the basis that it lacks merit.

**B.      Ground Two – Speedy Trial Claim**

### 1.    *Relevant Law*

In Ground Two, Gaston asserts that he was denied his Sixth Amendment right to a speedy trial. The Sixth Amendment to the United States Constitution guarantees a defendant a "speedy and public trial[.]" U.S. Const. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972). In *Barker*, the Supreme Court refused to establish a set number of days constituting a violation of the speedy trial right. *Id.* at 523. Instead, the Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of the delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Id.* at 530; *United States v. Marion*, 404 U.S. 307, 320-21 (1971). The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992).

Ohio courts evaluate the state speedy trial provisions found in Ohio Revised Code § 2945.71 *et seq.*, which are considered coextensive with the Sixth Amendment speedy trial requirement. *Brown v. Bobby*, 656 F.3d 325, 330 (6th Cir. 2011) (citing *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218, 220 (1987) and *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589, 591 (1980)). Ohio Revised Code § 2945.71 provides that a person shall be brought to trial within 270 days after arrest, and that, for purposes of computing time, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. § 2945.71(C)(2) & (E). Section 2945.72 lists instances in which the time limit for bringing an accused to trial may be tolled, including "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" R.C. § 2945.72(H). "[A]ny time an Ohio court reviews

27

the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*." *Brown*, 656 F.3d at 331.

An accused may waive his constitutional right to a speedy trial, if he does so knowingly and voluntarily. *Barker*, 407 U.S. at 529. "[F]ollowing an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time." *O'Brien*, 34 Ohio St. 3d at 9, 516 N.E.2d at 221.

Because AEDPA deference applies to a state appellate court's speedy trial analysis on federal habeas review, a court:

> need not go into too great of depth in considering [the *Barker*] factors, but instead should simply ascertain whether the state court's decision constituted an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). A decision can "unreasonably apply" federal law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. This court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was "objectively unreasonable." *See Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004); *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004).

*Brown*, 656 F.3d at 332-33.

### 2.    *Application of Law*

Gaston has not established that the Ohio Court of Appeals for the Eleventh District's determination regarding the alleged violation of his speedy trial rights was objectively unreasonable. As previously noted, the Ohio Court of Appeals for the Eleventh District determined that Gaston executed an unconditional waiver of his speedy trial rights on May 30, 2014, and that

Gaston never withdrew his waiver or formally demanded a trial date. *Gaston*, 2018-Ohio-4575, ¶ 31. Thus, it found that Gaston's written, unconditional waiver was in effect until Gaston filed his Motion to Discharge, which the trial court construed as a withdrawal of Gaston's waiver and a demand for trial. *Id.* at ¶ 33. The Ohio Court of Appeals for the Eleventh District then analyzed the trial court's explanation for the sixty-one-day delay between when Gaston filed his Motion to Discharge (March 30, 2017) and the trial date (May 30, 2017), – including defense counsel's unavailability in April 2017, and defense counsel's preference for the May 30, 2017, trial date instead of an earlier date – and determined that the delay was not unreasonable. *Id.* at ¶ 37-38.

In his Petition, Gaston asserts that his waiver of speedy trial rights was not unlimited, that it was intended "to give time for the trial court to rule on the motion to suppress evidence[,]" and that it took the trial court twenty-six months to rule on that motion, which was unreasonable and violated his constitutional rights. (ECF Doc. No. 1, PageID # 6-7). To the extent Gaston attempts to assert new arguments in his Traverse that he did not raise in his Petition, "it is well-established that new arguments raised for the first time in a traverse, rather than the habeas petition itself, are not properly before the [c]ourt and will not be considered." *Wainwright*, WL 985628, at *2 (N.D. Ohio Mar. 31, 2022).

Gaston's May 30, 2017, "Waiver of Speedy Trial" provided:

> I, Timothy Markel Gaston, Defendant herein, hereby waive both my Constitutional and Statutory right to a speedy trial in the above-captioned case. Specifically, I waive my right to a speedy trial provided to me under both the Ohio and United States Constitution, and my rights to a speedy trial provided to me pursuant to Ohio Revised Code Sections 2945.71 through 2945.73 and 2941.401.

(ECF Doc. No. 7-1, PageID # 102). Despite his assertions in his Petition, there is no indication that this waiver was limited to the time required for the trial court to rule on his Motion to Suppress. The Ohio Court of Appeals for the Eleventh District determined that Gaston's waiver was unlimited, and that the sixty-one-day delay between Gaston's Motion to Discharge and the trial

date was not unreasonable. Gaston has not established that these determinations were objectively unreasonable, warranting habeas relief. Accordingly, the Court should deny Ground Two on the basis that it lacks merit.

## VII.    RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.    Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The

certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].”). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.    Analysis

If the Court accepts my recommendations, Gaston has not made a substantial showing of a denial of a constitutional right. Gaston's Ground One and Ground Two claims are non-cognizable, and/or meritless. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VIII.   RECOMMENDATION

Because Gaston has presented only claims that are non-cognizable in a federal habeas proceeding or otherwise lack merit, I RECOMMEND that the Court DISMISS and/or DENY the first and second grounds of Gaston's Petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also RECOMMEND that Douglas Fender, the current warden of the Lake Erie Correctional Institution, be substituted as the proper respondent in this case.


 Dated: 11/18/2022                      *s/Jennifer Dowdell Armstong*
                                        Jennifer Dowdell Armstrong
                                        U.S. Magistrate Judge


## IX.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically

identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).