UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY GASTON, | ) | CASE NO. 1:19-cv-2462 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| WARDEN DOUGLAS FENDER, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the report and recommendation (Doc. No. 18 ("R&R")) of Magistrate Judge Jennifer Dowdell Armstrong, recommending that this Court deny and dismiss petitioner Timothy Gaston's ("Gaston") writ of habeas corpus petition under 28 U.S.C. § 2254 (Doc No. 1 (Petition)) in its entirety. Gaston filed objections to the R&R. (Doc. No. 21 (Objections).) Respondent[1] filed neither a response to Gaston's objections, nor his own objections. For the reasons discussed herein, Gaston's objections to the R&R are OVERRULED, the R&R is ACCEPTED IN PART,[2] and Gaston's petition is DENIED.

---

[1] In the return of writ, Warden LaShann Eppinger noted that he was the warden of the Trumbull Correctional Institution where Gaston was previously incarcerated. (Doc. No. 7, at 1). Gaston is now incarcerated at the Lake Erie Correctional Institution. (Doc. No. 17, at 1 n.1.) The current warden of the Lake Erie Correctional Institution is Warden Douglas Fender. Thus, Warden Fender is substituted as respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-435, 124 S. Ct. 2711, 159 L. Ed. 2d 513; Fed. R. Civ. P. 25(d) ("[W]hen a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

[2] The Court accepts all the R&R's recommendations, except that it rejects the R&R's recommendation that this Court deny a certificate of appealability as to Gaston's second ground for relief.

**I. BACKGROUND**[3]

The following background facts were determined by the Ohio Court of Appeals for the Eleventh District (the "Ohio Court of Appeals") and are presumed to be correct in this habeas corpus proceeding. 28 U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, *2 (6th Cir. Oct. 30, 2017). Gaston is currently serving a sentence of life imprisonment in state custody in Ohio for aggravated murder and aggravated burglary, each with a firearm specification. *See State v. Gaston*, No. 2017-L-109, 2018 WL 5923686, at *1 (Ohio Ct. App. Nov. 13, 2018). After evidence connected Gaston to the murder of one Matthew Hammond, detectives in Ohio (the "Ohio Detectives") attempted to locate Gaston for questioning. (*Id.*) The Ohio Detectives determined that Gaston was living in Knoxville, Tennessee. (*Id.*)

> {¶ 6} After arriving in Knoxville [the Ohio Detectives] spoke with Investigator Ed Kingsbury, of the Knoxville Police Department[ (the "Knoxville Detective")]. The Ohio [Detectives] explained they wished to interview [Gaston] as a person of interest in a murder investigation. In the course of the discussion, they revealed [Gaston] had been adjudicated delinquent for a juvenile sex offense. [The Knoxville Detective] advised them that, under Tennessee law, sex offenders are required to register with the state. [Gaston] had not registered. Ultimately, [the Knoxville Detective], along with two U.S. Marshalls[sic], visited [Gaston's] apartment in Knoxville. The Ohio [Detectives] accompanied them, but remained out of sight in the complex's parking lot.
>
> {¶ 7} [Gaston] answered his door and [the Knoxville Detective] explained the reason why he and the Marshalls[sic] were there. He asked [Gaston] to accompany him to the police department to determine whether he was required to register. [Gaston] agreed and entered the back seat of the [the Knoxville Detective's] unmarked vehicle. [The Knoxville Detective] emphasized [Gaston] was not required to accompany him and, at no time, was his freedom of movement restrained. Upon arriving at the department, [Gaston] was placed in [the Knoxville Detective's] office, located in the lobby of the building. [The Knoxville Detective] subsequently spoke with, among others, the Knoxville District Attorney's Office and concluded [Gaston] was not required to register as a sexual offender. Upon

---

[3] The R&R contains a more detailed recitation of the factual background in this case. This Court includes only the factual and procedural background pertinent to Gaston's objections to the R&R.

drawing this conclusion, [the Knoxville Detective] left the office and advised [the Ohio Detectives] they could speak with [Gaston].

{¶ 8} [The Ohio Detectives] approached [Gaston], identified themselves, explained the reason for their presence, and commenced their interview. The Ohio [Detectives] were not aware that [Gaston] was not required to register and assumed he had been arrested by [the Knoxville Detective]. They disclosed this belief to [Gaston] and provided him with *Miranda* warnings, which he acknowledged and proceeded with the interview. Notwithstanding his assumption regarding [Gaston's] arrest, [the Ohio Detectives] noted appellant was not restrained in any way and [Gaston] possessed his cell phone, which [Gaston] used periodically throughout the interview.

{¶ 9} During the interview, [Gaston] admitted he was at the scene of the murder, and that Mr. Ligon and Mr. Askew were involved. He stated he and the other two men intended on breaking into the trailer to steal money because they believed Mr. Hammond kept a fair amount of cash on hand. Once they arrived, [Gaston] maintained Mr. Askew remained in the vehicle and Mr. Ligon broke into the residence. He first maintained he remained on the porch. [Gaston] then admitted he entered the trailer to grab Mr. Ligon approximately 15 seconds after he broke into the residence. Upon entering, he stated he observed a struggle between Mr. Hammond and Mr. Ligon. When he realized he could not compel Mr. Ligon to leave, appellant claimed he left the trailer and, while leaving, he heard a gun fire. He subsequently moved to Tennessee.

{¶ 10} [Gaston] was indicted on fifteen counts . . . . [Gaston] pleaded not guilty and defense counsel filed a motion to suppress appellant's statement made to the [Ohio Detectives].

{¶ 11} In his motion to suppress, [Gaston] asserted his statements during his interview with [the Ohio Detectives] were obtained as a result of or subsequent to an unlawful arrest. In particular, he asserts he was arrested by Tennessee officers for failing to register as a sex offender in Tennessee. And, this unlawful arrest was occasioned by the [Ohio Detectives] contacting the Tennessee authorities to assist in apprehending him. He argued Tennessee authorities worked in coordination with the [Ohio Detectives] to improperly secure his arrest in order for the Ohio [Detectives] to interrogate him regarding the murder of Mr. Hammond.

{¶ 12} In response, the state argued that, even though the Ohio [Detectives] erroneously advised [Gaston] he was under arrest by the Knoxville Police Department, he was never actually under arrest. Instead, the state maintained [Gaston] voluntarily accompanied the Tennessee officers to their department to determine whether he should be registered. Thus, the state concluded, because there

3

was no initial arrest, the evidence gleaned from the interview was not tainted and should not be suppressed.

{¶ 13} The trial court held a hearing on the motion and ultimately denied the same, concluding [Gaston] was neither under arrest when he spoke with [the Knoxville Detective], nor when he was interviewed by the [Ohio Detectives]. [Gaston] also filed a motion for discharge for violation of his right to speedy trial. The trial court denied the motion.

{¶ 14} After plea negotiations fell through, the case proceeded to trial. The jury found [Gaston] guilty on all counts.

*Gaston*, 2018 WL 5923686, at *1–3.

Following his trial and conviction on all counts, Gaston timely appealed to the Ohio Court of Appeals, raising two assignments of error:

1. "The trial court erred in denying Defendant's motion to suppress his statement."

2. "The trial court erred in denying Defendant's motion for discharge for violation of Defendant's right to speedy trial."

*Id.* at *3–5 (internal quotation marks omitted). The Ohio Court of Appeals affirmed the judgment of the trial court. (*Id.*) Gaston then filed a notice of appeal in the Supreme Court of Ohio (Doc. No. 7-1, at 347–48), raising the following two propositions of law:

1. The trial court erred in denying Gaston's motion to suppress, in violation of his protections against illegal search and seizure and self-incrimination under the Fourth and Fifth Amendments to the U.S. Constitution, and Article I, Section [] 14 of the Ohio Constitution.

2. The trial court violated Gaston's right to a speedy trial, as provided by the Sixth Amendment to the U.S. Constitution and Article I, Section [] 10 of the Ohio Constitution.

(*Id.* at 350.) On March 6, 2019, the Ohio Supreme Court declined to accept jurisdiction of Gaston's appeal. (*Id.* at 395.) Justice Donnelly, however, dissented on the basis that he would accept the

4

cause on Gaston's second proposition of law. *State v. Gaston*, 154 Ohio St. 3d 1521, 118 N.E.3d 258 (Table) (2019) (Donnelly, J., dissenting).

On October 21, 2019, Gaston petitioned *pro se* that this Court issue a writ of habeas corpus (Doc. No. 1),[4] raising two grounds for relief:

1. Petitioner was denied his protections against illegal search and seizure and self-incrimination, rights secured under the Fourth and Fifth Amendments to the U.S. Constitution when his trial court erred in denying Gaston's motion to suppress.

2. Petitioner was denied his right to a speedy trial as provided by the Sixth Amendment to the U.S. Constitution.

(*Id.* at 5–6.) On November 18, 2022, the magistrate judge issued an R&R recommending that this Court deny and dismiss Gaston's petition in its entirety. (Doc. No. 18.) Gaston, through counsel, filed objections to the R&R. (Doc. No. 21.)

## II. STANDARD OF REVIEW

When a party timely objects to a magistrate judge's report and recommendation on a dispositive matter, the district court must conduct a *de novo* review of those portions of the report and recommendation to which a proper objection is made. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). After review, the

---

[4] While Gaston filed his petition *pro se*, counsel later made an appearance on his behalf and appears to have assisted in filing Gaston's traverse and objections to the R&R.

district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

In conducting its de novo review in a habeas context, this Court must be mindful of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). And "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 18, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 175 L. Ed. 2d 738 (2010)). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (quoting § 2254(e)(1)); *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). "This

6

standard requires the federal courts to give considerable deference to state-court decisions." *Ferensic v. Birkett*, 501 F. 3d 469, 472 (6th Cir. 2007).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)). As such, the Supreme Court has admonished that a reviewing court may not "treat[] the unreasonableness question as a test of its confidence in the result it would reach under de novo review[,]" and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded [sic] disagreement." *Harrington*, 562 U.S. at 103. The Supreme Court readily acknowledges that this is a very high standard, observing that: "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

### III. DISCUSSION

Gaston filed objections to the R&R as it pertains to both grounds for relief raised in his writ of habeas corpus petition. The Court will address each in turn.

#### A. Ground One: Fifth Amendment Violation[5]

Related to his Fifth Amendment claim, Gaston objects to two specific findings made by the magistrate judge in the R&R:

1. "Gaston has not established that the Ohio Court of Appeals for the Eleventh District's decision regarding the alleged violation of his Fifth Amendment rights was an unreasonable application of the facts, or an incorrect application of clearly established federal law[;]" and

2. "While Gaston asserts that he did not knowingly, intelligently, and voluntarily waive his Fifth Amendment rights, and that his statements were a result of coercion, those assertions are not supported by the record."

(Doc. No. 21, at 2 (quoting Doc. No. 18, at 24–25, 26).) Gaston contends that "it is the unreasonable determination of the facts that warrants habeas relief." (*Id.* at 3.) Gaston points to three specific factual determinations that he contends were unreasonable. The Court will review each instance in turn. In doing so, the Court's review is limited to determining whether Gaston has established by "clear and convincing evidence" that the state court's factual determinations were unreasonable based on the record that was before the state court. *See Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

---

[5] Gaston's first ground for relief also asserted a Fourth Amendment violation. (Doc. No. 1, at 3.) In her R&R, the magistrate judge recommended that this Court dismiss Gaston's Fourth Amendment claim as non-cognizable. (Doc. No. 18, at 21–22.) Gaston did not object to that determination. The failure to file written objections to a finding in a magistrate judge's report and recommendation constitutes a waiver of a de novo determination by the district court of that issue. *Thomas v. Arn*, 728 F.2d 813, 814–15 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *see United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This Court has reviewed the R&R relative to Gaston's Fourth Amendment claim and accepts and adopts the same. Accordingly, Gaston's Fourth Amendment claim for relief is dismissed as non-cognizable.

First, Gaston contends that the "factual determination that Gaston was free to leave at any time is undermined by the presence of hidden Ohio law enforcement in the parking lot, and the accompaniment of two US Marshalls[sic] with the [Knoxville Detective]." (Doc. No. 21, at 3.) This Court agrees with the magistrate judge's conclusion that the state court's factual determination that Gaston was free to leave at any time was not unreasonable. Gaston has not pointed to any clear and convincing evidence that instructs otherwise.

In reaching its determination that Gaston was free to leave and, thus, not under arrest, the state court pointed to record evidence that Gaston voluntarily agreed to accompany the Knoxville Detective to the police department and did so by riding unrestrained in the Knoxville Detective's unmarked truck, during which the two engaged in friendly conversation. *Gaston*, 2018 WL 5923686, at *4. At the police department, Gaston sat in the Knoxville Detective's office, which was located in the lobby on the first floor of the building. *Id.* at *2, 4. Gaston was not restrained in any way. *Id.* at *2. The Knoxville Detective testified at the motion to suppress hearing that, after he determined that Gaston was not required to register as a sex offender in Tennessee, he asked Gaston if he would be willing to speak with the Ohio Detectives and Gaston agreed to do so. *Id.* at *5. Moreover, when the Ohio Detectives greeted Gaston, they explained the reason for their presence, and they too asked him if they could interview him. *Id.* Again, Gaston agreed, and, according to the Knoxville Detective, Gaston did so in a "friendly" fashion. *Id.* Further, one of the Ohio Detectives testified that Gaston possessed his cell phone, which he used periodically throughout the interview by the Ohio Detectives. *Id.* at *2.

In his objections, Gaston does not contend that this record evidence is incorrect. Rather, he points to other evidence that "undermines" the court's determination. But Gaston does not explain how the presence of the "hidden" Ohio Detectives would make a reasonable person believe they

9

were under arrest. And while, standing alone, the presence of two "armed" U.S. Marshals in "tactical vests" might be evidence that suggests a reasonable person would not feel free to leave, *see Gaston*, 2018 WL 5923686, at *3, the presence of the U.S. Marshals does not negate the other evidence, which the state court relied on in concluding that, given the totality of the circumstances, a reasonable person would know they were not under arrest and were free to leave. For these reasons, the state court's factual determination that Gaston was not under arrest because he was free to leave at any time was not unreasonable.

Second, Gaston contends that "in light of the evidence," it was unreasonable to conclude that "Gaston understood he was not under arrest . . . because the Ohio [Detectives] clearly believed Gaston was under arrest for the entire interview, they had believed he was under arrest the moment he walked out of his apartment." (Doc. No. 21, at 3.) For many of the same reasons just discussed, the magistrate judge's conclusion that the state court's factual determination that Gaston understood he was not under arrest was not unreasonable. Any subjective beliefs of the Ohio Detectives do not amount to clear and convincing evidence that instructs otherwise.

The Ohio Detectives only saw Gaston leaving his apartment with the Knoxville Detective and two U.S. Marshals, which, as the Court acknowledged above, considered alone might suggest that Gaston was under arrest. But the Ohio Detectives were not privy to the totality of the circumstances. Gaston was. The Ohio Detectives were not physically present for the conversation between the Knoxville Detective and Gaston at his apartment (or on the way to the police department), nor were the Ohio Detectives present in the Knoxville Detective's office. The subjective belief of the Ohio Detectives does not evince that a reasonable person in Gaston's position would have believed that they were under arrest. Accordingly, the state court's factual determination that Gaston understood he was not under arrest was not unreasonable.

Third, Gaston contends that his *Miranda* waiver could not have been knowingly and intelligently made because "Gaston was being misled throughout the duration of the encounter." (Doc. No. 21, at 3–4.) Here, too, this Court agrees with the magistrate judge's determination that the state court's decision concerning Gaston's Fifth Amendment claim was not unreasonable. Again, Gaston has failed to point to any evidence that instructs otherwise.

Contrary to Gaston's contention that he was "misled," the record evidence cited above was relied upon by the Ohio Court of Appeals to determine that Gaston understood he was not under arrest when he agreed to accompany the Knoxville Detective to the police department, during the interview with the Knoxville Detective, or when he agreed to talk to the Ohio Detectives. The Ohio Court of Appeals then determined that because Gaston was not under arrest when he agreed to speak with the Ohio Detectives, the Ohio Detectives did not even need to give Gaston *Miranda* warnings. *Gaston*, 2018 WL 5923686, at *5. While the Ohio Detectives did erroneously advise Gaston that he was under arrest by Tennessee officers when the interview started, the Ohio Court of Appeals held that an unnecessary reading of *Miranda* warnings based on the Ohio Detectives' erroneous assumption did not transform the voluntary interview into an arrest.[6] *Id.* Because Gaston was not required to be given *Miranda* warnings, any valid waiver of *Miranda* rights was likewise not required and does not warrant habeas relief. Accordingly, the state court's decision concerning Gaston's Fifth Amendment claim was not unreasonable.

---

[6] To the extent Gaston contends that the reading of *Miranda* warnings would have led a reasonable person to believe they could not leave, this Court reiterates that the Ohio Court of Appeals considered the totality of the circumstances in determining that Gaston was not under arrest at any point. Such circumstances relevant here include the fact that no Tennessee officers or the Ohio Detectives ever restrained Gaston in any way, Gaston voluntarily agreed to speak with the Ohio Detectives when the Knoxville Detective was leading him out of the building, and Gaston retained possession of his cell phone, which he used during his interview with the Ohio Detectives. *See Gaston*, 2018 WL 5923686, at *2, 5. (*See also, e.g.*, Doc. No. 8, at 59, 187.) While reading of *Miranda* warnings standing alone might suggest to a person that they are under arrest and not free to leave, given the totality of the circumstances here, it was reasonable for the Ohio Court of Appeals to find that Gaston understood he was not actually under arrest, even after the Ohio Detectives read him *Miranda* warnings. *See Gaston*, 2018 WL 5923686, at *5.

For the reasons discussed, Gaston's objections related to his first ground for relief are overruled.

## B. Ground Two: Speedy Trial Right Violation

Gaston objects to two specific findings by the magistrate judge related to his claim that his right to a speedy trial was violated:

1. "Gaston has not established that the Ohio Court of Appeals for the Eleventh District's determination regarding the alleged violation of his speedy trial rights was objectively unreasonable[;]" and

2. "There is no indication that this waiver was limited to the time required for the trial court to rule on his Motion to Suppress.

(Doc. No. 21, at 4 (quoting Doc. No. 18, at 28, 29).) It is worth repeating the facts relevant to Gaston's speedy trial claim:

- April 7, 2014 – Gaston was arrested following his interview with the Ohio Detectives in Tennessee. (*See* Doc. No. 7-1, at 132; 146.)

- April 28, 2014 – Gaston was arraigned in the Lake County Court of Common Pleas (*Id.* at 396 (*see* 04/28/2014 Judgment Entry).)

- May 14, 2014 – The trial court set trial for June 10, 2014. (*Id.* at 397.)

- May 30, 2014 – Gaston filed a motion to continue the trial date, representing that "more time is needed to conduct an investigation," and signed a waiver of speedy trial. (*Id.* at 33, 36.)

- June 5, 2014 – The trial court continued the trial date to August 5, 2014. (*Id.* at 35.)

- July 23, 2014 – Gaston filed a second motion to continue the trial date, representing that he needed more time to investigate potential suppress issues and to engage in plea discussions.[7] (*Id.* at 37.)

- August 5, 2014 – Gaston filed a motion to suppress. (*Id.* at 40.)

- February 11, 2015 – After a few continuances, the trial court held a hearing on Gaston's motion to suppress. (*See id.* at 121.)

- February 27, 2015 – Gaston and the prosecution filed respective post-hearing briefs as requested by the trial court. (*Id.* at 85, 96.)

- February 24, 2017 – State filed motion to set trial date. (*Id.* at 400.)

- March 30, 2017 – Gaston filed a motion to discharge for violation of his right to a speedy trial. (*Id.* at 130.)

- April 28, 2017 – The trial court denied Gaston's motion to suppress. (*Id.* at 121.)

In his objections, Gaston also takes issue with the fact that neither the magistrate judge nor the Ohio Court of Appeals addressed "whether the time the [state] trial court took to rule on the Motion to Suppress was reasonable." (Doc. No. 21, at 4.) As illustrated by the above-cited record, the state trial court took over 26 months to issue a decision on Gaston's motion to suppress. This Court is troubled by the duration of time that the state trial court allowed a defendant to sit in jail pending trial while a motion to suppress sat ripe on its docket, but, here, the reasonableness of the trial court's delay in ruling on the motion to suppress is not the relevant inquiry. Because Gaston signed a waiver of his speedy trial rights for an unlimited duration, the Ohio Court of Appeals was

---

[7] There is no indication on the docket that this motion was addressed; only a notation that the August 5, 2014, trial date was "continued – motions filed." (Doc. No. 7-1, at 397.) There is no indication on the docket that the trial court scheduled a new trial date until March 30, 2017, when it set the May 30, 2017, trial date. (*See* Doc. No. 7-1, at 400 (03/30/2017 Docket Entry).)

13

correct to focus not on whether "the time the [state] trial court took to rule on the Motion to Suppress was reasonable," but instead focus on the reasonableness of the time between when Gaston withdrew his waiver and the date of trial. *See State v. O'Brien*, 516 N.E.2d 218, 221 (Ohio 1987) ("[F]ollowing an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time.")

Gaston contends that his waiver was not unlimited, arguing that it is unreasonable to find otherwise because the state trial court's judgment entry, filed after his waiver, continued the trial date to August 5, 2014, and extended the speedy trial time "for the period of the continuance." (Doc. No. 21, at 4 (citing Doc. No. 7-1, at 35).) Gaston also contends his waiver could not have been knowingly and voluntarily because "Gaston could not possible have known that the consequence of the waiver would be a 26 month delay in ruling on his motion to suppress." (*Id.* at 5.) It does not appear that Gaston presented either of these arguments to the Ohio Court of Appeals and, for that reason, these arguments were not fairly presented and are overruled.[8] *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." (citing *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987))).

But even if this Court were to consider these arguments on the merits, they would still be insufficient to establish that the Ohio Court of Appeals' determination was unreasonable. Gaston's

---

[8] Before the Ohio Court of Appeals, Gaston's argument was that three separate trial court judgment entry's charging continuances "to the defendant" demonstrated that the trial court did not believe Gaston's continuance to be unlimited. *Gaston*, 2018 WL 5923686, at *6. (*See also* Doc. No. 7-1, at 284.) The Ohio Court of Appeals rejected this argument, *id.*, and it seems as though Gaston abandoned that theory in lieu of the new theory raised in his traverse.

14

signed written waiver did not include any time conditions, was signed by both Gaston and witnessed by his attorney, and there was nothing in the record to suggest the waiver was not knowing and voluntary. (Doc. No. 7-1, at 36.) Gaston signed the waiver on May 30, 2014—before the trial court put on its entry setting the new June 10, 2014, trial date. Thus, he signed the waiver with no condition of time set. Further, Gaston argues that the trial court's subsequent judgment entry "effectively limited" Gaston's waiver as valid only until August 5, 2014, but when Gaston filed a second motion to continue the trial date on July 23, 2014, he did not include another, renewed signed waiver. (*See* Doc. No. 7-1, at 37.) Moreover, there is no indication in the record that Gaston questioned the trial court's failure to set a new trial date until he filed his motion to discharge. While some evidence might suggest Gaston's waiver was time limited, this Court must defer to the state court's factual findings unless they are unreasonable. For the reasons discussed, the Court finds that the Ohio Court of Appeals' finding that Gaston's waiver was for an unlimited duration was not unreasonable.

Turning to the relevant inquiry—the reasonableness of the time (61 days) between Gaston's motion to discharge and trial under *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)—Gaston contends that the Ohio Court of Appeals relied on Gaston's "failure to show prejudice" in finding there was no speedy trial violation, which he contends is contrary to the facts in the record and contrary to established federal law. (Doc. No. 21, at 5.) Having reviewed the Ohio Court of Appeals' decision, this Court finds that the court did consider all four relevant *Barker* factors in determining that the time between the motion to discharge and trial was reasonable. *Gaston*, 2018 WL 5923686, at *6–7 (walking through four *Barker* factors). Further, the only argument that Gaston advanced concerning prejudice he suffered during the 61 days was that "[p]rejudice to the [d]efendant becomes obvious." (Doc. No. 7-1, at 138.) It seems then that

15

Gaston means to argue that this "obvious" prejudice was the 26-month delay of the trial court ruling on his motion to suppress. But for the reasons discussed above, in the R&R, and in the state court decisions, Gaston cannot claim prejudicial delay after signing a waiver of unlimited duration and failing to withdraw that waiver or otherwise object to the delay. *See O'Brien*, 516 N.E.2d at 221.

For these reasons, this Court finds that it was not unreasonable or contrary to established federal law for the Ohio Court of Appeals to find that the 61 days between Gaston's motion for discharge and his trial was not a violation of his constitutional speedy trial rights.

Accordingly, Gaston's objections related to his second ground for relief are overruled.

## IV.  CONCLUSION

For the reasons set forth herein, Gaston's objections to the R&R are OVERRULED and the R&R is ACCEPTED IN PART, and Gaston's petition for writ of habeas corpus is DENIED. The Court CERTIFIES that an appeal from this decision could be taken in good faith only as to the speedy trial violation claim in ground two. 28 U.S.C. §§ 1915(a)(3); 2253(c); Fed. R. App. P. 22(b). Further, the Clerk is directed to substitute Warden Fender for Warden Eppinger as respondent in this case.

**IT IS SO ORDERED**.

Dated: February 6, 2023

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**